FILED

MAR - 7 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

In re                              )     Case No. 05-93390-A-13G
                                   )
MICHAEL and MARILYN VALGOS,        )     Docket Control No. RDG-1
                                   )
          Debtor.                  )     Date: March 6, 2006
                                   )     Time: 2:00 p.m.
                                   )
_____)

**MEMORANDUM**

The chapter 13 trustee's objection that the plan does not
satisfy 11 U.S.C. § 1325(b) will be sustained.  The objection
pertaining to the plan's provision for attorney's fees will be
overruled.

I

The objection concerning the attorney's fees will be
overruled.  The plan states that counsel has been paid $2,500.
Nothing remains to be paid.  The plan's addendum and ¶ 3.08 both
indicate that as much as an additional $1,000 in fees may be
incurred.  These are not being approved in connection with the
confirmation of the plan.  The $1,000 would be paid only if
counsel later applies for, and the court approves, the fees.

Consequently, if the plan payments are not consumed by
trustee's fees, other administrative expenses, ongoing Class 1

payments, and payment of secured claims, the remainder will be paid pro rata to Class 5 claims, then, when Class 5 claims are paid, pro rata to Class 6 claims, then, when Class 6 claims are paid, pro rata to Class 7 claims up to the minimum percentage dividend specified in the plan, then when the minium percentage dividend is paid, the remainder is to be paid pro rata to the secured claims (this would be in addition to the specified dividends promised each holder of an unsecured claim).  Should the court later approve additional fees, the remainder would be used to pay those fees, and once they are paid, the remainder would again be distributed as indicated above.

## II

The objection pursuant to 11 U.S.C. § 1325(b) will be sustained.

According to Official Form 22C, the debtor's current monthly income exceeds the applicable median family income.  Therefore, disposable income must be projected pursuant to 11 U.S.C. §§ 707(b)(2)(A) and (B) & 1325(a)(3).  When this is done, the debtor's monthly projected disposable income will $849.13.  Because the trustee has objected, and because the plan does not propose to pay unsecured claims in full, the projected $849.13 to be received during each month of the applicable commitment period must "be applied to make payments to unsecured creditors under the plan."  See 11 U.S.C. § 1325(b)(1)(1)(B).

The plan does not carve out this $849.13, or any other amount, for unsecured creditors each month of the 60-month commitment period.  Nonpriority unsecured creditors will be paid nothing.  Therefore, the plan cannot be confirmed.

-2-

The debtor asserts that the court, when projecting the debtor's future disposable income, should make an adjustment to the debtor's current monthly income.  According to the debtor's Official Form 22C, during the six months prior to the filing of the petition, the debtor received "disability benefits."  The debtor asserts that these benefits will end in the near future. Assuming this fact is true, the debtor has not pointed to any provision in section 1325(b) that permits the court to make such an adjustment.

Assuming an objection by the trustee or an unsecured creditor, section 1325(b)(1) requires a chapter 13 debtor not paying unsecured creditors in full to pay "all of the debtor's projected disposable income to be received" during the plan's commitment period into the plan for payment to "unsecured creditors."  Section 1325(b)(4) defines the "applicable commitment period."  For debtors over the applicable median family income, as the debtor in this case, the applicable commitment period is 60 months.

Section 1325(b)(2) specifies that disposable income is "currently monthly income received by the debtor . . . less amounts reasonably necessary" for the debtor's and the debtor's dependents' maintenance and support, and for the continuation, preservation, and operation of a business operated by the debtor.

"Current monthly income" is defined by 11 U.S.C. § 101(10A) as the average of all of the debtor's income from all sources, without regard to whether it is taxable, but excluding benefits received under the Social Security Act, for the six-month period preceding the filing of the petition.

-3-

Thus, section 1325(b)(2) requires that the debtor's projected future living and business expenses be deducted from this historical average income amount, and not from the debtor's actual income or the debtor's projected future income.  The expenses deducted must be "reasonably necessary" to the debtor's or the debtor's dependents' maintenance or to the debtor's livelihood.

To further complicate matters, section 1325(b)(3) provides that if the debtor's current monthly income exceeds the applicable median family income, the amounts reasonably necessary to be expended for the debtor's maintenance, support, and livelihood under section 1325(b)(2) must be calculated by deducting the expenses permitted by 11 U.S.C. § 707(b)(2)(A) & (B).  That is, the debtor's expenses must be calculated pursuant to, or are limited by, the means test used in chapter 7 cases.

In the chapter 7 context, the means test of section 707(b)(2) requires that a chapter 7 debtor who is subject to the test [a debtor whose currently monthly income exceeds the applicable median family income] calculate certain actual and presumed monthly expenses then deduct them from current monthly income [as defined at 11 U.S.C. § 101(10A)].  See 11 U.S.C. §§ 707(a)(1) & (b)(2)(A)).  See, also Official Form 22A, Part V. The permissible deductions are laid out at section 707(b)(2)(A)(ii)-(iv).  If, after making the permissible deductions from current monthly income, the remaining current monthly income is less than $100 [or less than $6,000 over 5 years], the debtor is not presumptively abusing chapter 7 relief. If the remaining amount is equal to or greater than $166.67 [or

-4-

$10,000 or more over 5 years], the debtor is presumptively abusing chapter 7 relief.  If the debtor has more than $100 but less than $166.67 in remaining current monthly income, the debtor is presumptively abusing chapter 7 relief if that remaining amount is sufficient over 5 years to pay 25% of nonpriority unsecured claims.  See 11 U.S.C. § 707(b)(2)(A)(i); Official Form 22A, Part VI.

A chapter 7 debtor who flunks the means test may attempt to rebut the resulting presumption of abuse.  Section 707(b)(2)(B) explains how the presumption of abuse may be rebutted by the debtor.

A chapter 7 debtor must prove that he or she is laboring under "special circumstances," such as a serious medical condition or active duty in the military, that warrant either, or both, the deduction of additional expenses from current monthly income, or adjustments to the debtor's currently monthly income.  The economic impact of these further deductions or income adjustments must result in the debtor passing the means test.  See 11 U.S.C. § 707(b)(2)(A)(i).

The debtor in this case is, in essence, arguing that there should be a chapter 13 corollary to rebutting the presumption of abuse as permitted by section 707(b)(2)(B) in chapter 7 cases.  That is, a chapter 13 debtor with current monthly income over the applicable median family income should be permitted to demonstrate that his or her projected disposable income is not as much as the formula mandated by section 1325(b) because adjustments to income or to expenses are required by the debtor's special circumstances.

-5-

1    There are two problems with this argument.

2    First, in order to merit an adjustment to income and/or

3 expenses, a chapter 7 debtor must document under oath all

4 adjustments and provide a detailed explanation of the special

5 circumstances making the adjustments both reasonable and

6 necessary.  See 11 U.S.C. § 707(b)(2)(B)(ii) & (iii).

7    The debtor in this case has not filed anything, nor asked

8 leave to file anything, under oath or otherwise, documenting

9 either "special circumstances" or reasonably necessary

10 adjustments to income or expenses warranted by any special

11 circumstances.

12    The debtor has asserted through counsel that monthly

13 disability benefits of $1,740 will end sometime during the plan.

14 When will they end?  Does the termination of the benefits mean

15 that the debtor is no longer disabled and may return to work?  If

16 the debtor returns to work, how much will the debtor earn?  If

17 the disability benefits will end even though the debtor remains

18 disabled, will those benefits be replaced by some other type of

19 benefit – private insurance, welfare, social security?  The

20 debtor has offered nothing specific on issues such as these.

21    Second, section 1325(b) does not merely incorporate section

22 707(b)(2)(B) and make it applicable in chapter 13.  The only

23 reference to section 707(b)(2)(B) in section 1325 appears in

24 paragraph (b)(3), providing that "[a]mounts reasonably necessary

25 to be expended under paragraph (2) [of section 1325(b)] shall be

26 determined in accordance with subparagraphs (A) and (B) of

27 section 707(b)(2)."  That is, when calculating the reasonable and

28 necessary expenses that may be deducted from current monthly

-6-

income, a chapter 13 debtor may deduct those expenses permitted
by section 707(b)(2)(A) as well as the additional expenses
justified by the debtor's special circumstances.

Nothing in section 1325(b)(3) authorizes the debtor to make
adjustments to current monthly income, the reference to section
707(b)(2)(B) notwithstanding.  That earlier language of section
1325(b)(3) gives context to that reference.  Section 707(b)(2)(B)
must be consulted only to determine "amounts reasonably necessary
to be expended" on the debtor's and the debtor's dependents'
maintenance and support as well as the debtor's business.

Essentially, the calculation of a chapter 13 debtor's
projected disposable income under section 1325(b), requires that
three variables be defined: (1) the length of the plan; (2) the
debtor's future income; and (3) the debtor's ongoing personal
living and business expenses.

> (1) The mandatory length of a plan is the
> "applicable commitment period." For a debtor with
> current monthly income in excess of applicable
> median family income, section 1325(b)(4) requires
> a commitment period of five years.

> (2) Section 1325(b)(2) requires that a chapter 13
> debtor's future income be predicted based on the
> "currently monthly income received by the debtor.
> . . ."  That is, future monthly income is based
> solely on the debtor's average income received
> over the six-month period preceding the filing of
> the petition.  Beyond permitting the court to
> exclude child support payments, foster care
> payments, or disability payments for a dependent
> child, there is nothing in section 1325(b)(2)
> permitting the court to make adjustments to this
> six-month historical average.

> (3) From current monthly income, a chapter 13
> debtor may deduct reasonable and necessary
> anticipated living and business expenses.  If the
> debtor's current monthly income equals or is less
> than the applicable median family income, what is
> reasonable and necessary is left to the discretion

-7-

1    of the court.  If the debtor's current monthly
     income exceeds the applicable median family
2    income, the reasonably necessary expenses must be
     calculated by using the means test formula of
3    section 707(b)(2)(A) but the debtor also is
     permitted to argue that, under section
4    707(b)(2)(B), special circumstances warrant
     adjustments to the expenses deductible from
5    current monthly income.

6        When these variables are defined in the context of this

7    case, the court is compelled to conclude that the proposed plan

8    will not devote all projected disposable income to the debtor's

9    unsecured creditors.

10                                III

11        For these reasons, the trustee's objection that the plan

12    does not comply with section 1325(b) will be sustained.   The

13    trustee shall lodge a proposed order.

14    Dated:  7 March 2006

15                               By the Court

16

17
                               _____
18                             Michael S. McManus, Chief Judge
                               United States Bankruptcy Court
19

20

21

22

23

24

25

26

27

28

                               -8-

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Michael O'Neal
1565 River Park Dr #A
Sacramento, CA 95815

Marilyn Valgos
3500 San Clemente Ave #154
Modesto, CA 95356

Michael Valgos
3500 San Clemente Ave #154
Modesto, CA 95356

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Office of the U.S. Trustee
501 I Street , Room 7-500
Sacramento, CA 95814

Dated: March _7_, 2006

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus