FILED

MAR 1 3 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

|  |  |
|---|---|
| In re | Case No. 05-93390-A-13G |
| MICHAEL and MARILYN VALGOS, | Docket Control No. RDG-1 |
| Debtors. | Date: March 6, 2006<br>Time: 2:00 p.m. |

### MEMORANDUM[1]

The chapter 13 trustee's objection that the plan proposed by Michael and Marilyn Valgos ("the Debtors") does not satisfy 11 U.S.C. § 1325(b) will be sustained.

According to the Debtors' Official Form 22C, their current monthly income exceeds the applicable median income.  Therefore, the Debtors completed Official Form 22C in its entirety in order to project their disposable income for the life of the proposed plan.  See 11 U.S.C. §§ 707(b)(2)(A) and (B) & 1325(a)(3).

---

[1]    This Memorandum supplants the court's earlier Memorandum insofar as it dealt with the trustee's objection under 11 U.S.C. § 1325(b).

1  According to these calculations, the Debtors have monthly
2  projected disposable income of $849.13.
3      Because the trustee has objected, and because the plan does
4  not propose to pay unsecured claims in full, the projected
5  $849.13 must "be applied to make payments to unsecured creditors
6  under the plan." See 11 U.S.C. § 1325(b)(1)(B).
7      The plan, however, does not carve out this $849.13, or any
8  other amount, for unsecured creditors each month of the 60-month
9  commitment period.  Nonpriority unsecured creditors will be paid
10 nothing.  Therefore, it seems clear that the plan cannot be
11 confirmed consistent with section 1325(b).
12     The Debtors nonetheless argue that the proposed plan does
13 not violate section 1325(b).
14     According to the Debtors' Official Form 22C, during the six
15 months prior to the filing of the petition, one of the Debtors,
16 Mr. Valgos, received a monthly disability benefit.  The Debtors
17 assert that this benefit will end in the near future and
18 therefore the court should adjust their current monthly income
19 downward.  The Debtors have failed, however, to point to any
20 provision in section 1325(b) that permits the court to make such
21 an adjustment.
22     Assuming an objection by the trustee or an unsecured
23 creditor, section 1325(b)(1) requires a chapter 13 debtor, not
24 paying unsecured creditors in full, to pay "all of the debtor's
25 projected disposable income to be received" during the plan's
26 "applicable commitment period" into the plan for payment to
27 "unsecured creditors."
28 ///

1    Section 1325(b)(4) defines the "applicable commitment
2  period."  For a debtor over the applicable median income, like
3  the Debtors in this case, the applicable commitment period is not
4  less than five years.
5    Section 1325(b)(2) defines disposable income as "current
6  monthly income received by the debtor . . . less amounts
7  reasonably necessary" for the maintenance and support of the
8  debtor and the debtor's dependents, and for the continuation,
9  preservation, and operation of a business operated by the debtor.
10    "Current monthly income" is defined by 11 U.S.C. § 101(10A)
11  as the average of a debtor's income from all sources, without
12  regard to whether it is taxable, but excluding benefits received
13  under the Social Security Act, for the six-month period preceding
14  the filing of the petition.
15    Thus, section 1325(b)(2) requires that a debtor's
16  anticipated living and business expenses be deducted from an
17  historical average of the debtor's pre-petition income, and not
18  from the debtor's actual income on the date the petition is filed
19  or from some estimation of the debtor's future income.
20    To further complicate matters, section 1325(b)(3) provides
21  that if a debtor's current monthly income exceeds the applicable
22  median income, the amounts reasonably necessary to be expended
23  for the debtor's maintenance, support, and business under section
24  1325(b)(2) must be calculated pursuant to 11 U.S.C. §
25  707(b)(2)(A) & (B).  That is, the debtor's expenses will be
26  limited to those permitted under the means test used in chapter 7
27  cases.
28  ///

1    In the chapter 7 context, the means test found at section
2  707(b)(2) applies to a chapter 7 debtor whose current monthly
3  income exceeds the applicable median income.  When triggered, the
4  means test limits the amount of the expenses that may be deducted
5  from current monthly income.  See 11 U.S.C. § 707(b)(2)(A)).  See
6  also Official Form 22A, Part V.  The permissible expense
7  deductions are laid out in section 707(b)(2)(A)(ii)-(iv).

8    For some expenses, primarily living, housing, and
9  transportation expenses, the limits imposed by the means test are
10 based on standards used by the Internal Revenue Service when
11 negotiating compromises with taxpayers owing delinquent taxes.
12 See 11 U.S.C. § 707(b)(2)(A)(ii)(I).  However, a chapter 7 debtor
13 may, if reasonably necessary, supplement the amounts allowed
14 under the Internal Revenue Service standards for food and
15 clothing [up to five percent over what is permitted by the
16 National Standards] and for utilities [actual home energy costs].
17 See 11 U.S.C. § 707(b)(2)(A)(ii)(I) & (V).

18    Some actual expenses may be deducted under the means test,
19 albeit subject to a cap.  For example, a chapter 7 debtor's
20 expenses may include up to $1,500 in annual education expenses
21 for a minor child.  See 11 U.S.C. § 707(b)(2)(ii)(IV).

22    Provided they meet the basic requirement of being reasonable
23 and necessary, other actual expenses may be deducted without
24 limitation.  For example, a chapter 7 debtor may deduct all
25 expenses that are reasonably necessary for the care and support
26 of an elderly, chronically ill, or disabled household member or a
27 member of the debtor's immediate family.  See 11 U.S.C. §
28 707(b)(2)(ii)(II).

-4-

1    Other actual expenses of a chapter 7 debtor may be deducted
2  but the means test requires that they be amortized over a 60-
3  month period.  Amounts owed to secured and priority creditors are
4  calculated on this basis.  See 11 U.S.C. § 707(b)(2)(iii) & (iv).
5    If, after making the permissible deductions from current
6  monthly income, the remaining current monthly income is less than
7  $100 [or less than $6,000 over five years], a chapter 7 debtor is
8  not presumptively abusing chapter 7 relief.  If the remaining
9  amount is equal to or greater than $166.67 [or $10,000 or more
10 over five years], the debtor is presumptively abusing chapter 7
11 relief.  If the remaining current monthly income is more than
12 $100 but less than $166.67, and is sufficient to pay a 25%
13 dividend over a five-year period on priority unsecured claims,
14 the debtor is presumptively abusing chapter 7 relief.  See 11
15 U.S.C. § 707(b)(2)(A)(i)(I); Official Form 22A, Part VI.
16   A chapter 7 debtor who flunks the means test may attempt to
17 rebut the resulting presumption of abuse.  Section 707(b)(2)(B)
18 explains how the debtor may rebut the presumption.
19   A debtor must prove that he or she is laboring under
20 "special circumstances," such as a serious medical condition or
21 active duty in the military, that warrant either, or both, the
22 deduction of additional expenses from current monthly income, or
23 adjustments to the debtor's current monthly income.  See 11
24 U.S.C. § 707(b)(2)(B)(i).  The economic impact of these further
25 expense deductions or income adjustments must result in the
26 debtor passing the means test.  See 11 U.S.C. § 707(b)(2)(A)(i).
27   The Debtors in this case are arguing that there should be a
28 chapter 13 corollary to rebutting the presumption of abuse in a

1  chapter 7 case.  That is, a chapter 13 debtor with current

2  monthly income over the applicable median income should be

3  permitted to demonstrate that his or her disposable income will

4  be less than projected under section 1325(b) because of the

5  debtor's special circumstances.

6      There are two problems with this argument.

7      First, in order to merit an adjustment to income and/or

8  expenses, a chapter 7 debtor must document under oath all

9  adjustments and provide a detailed explanation of the special

10 circumstances making those adjustments both reasonable and

11 necessary.  See 11 U.S.C. § 707(b)(2)(B)(ii) & (iii).

12     The Debtors in this case have not filed anything, nor asked

13 leave to file anything, under oath or otherwise, documenting

14 either "special circumstances" or reasonably necessary

15 adjustments to income or expenses warranted by any special

16 circumstances.

17     The Debtors have asserted through their attorney that Mr.

18 Valgos' monthly disability benefit of $1,740 will end sometime

19 during the plan.  When will it end?  Does the termination of the

20 benefit mean that Mr. Valgos is no longer disabled and may return

21 to work?  If he returns to work, how much will he earn?  If the

22 disability benefit will end, even though Mr. Valgos remains

23 disabled, will it be replaced by some other type of benefit?

24 Would the definition of current monthly income at section

25 101(10A) exclude any replacement benefit from current monthly

26 income?

27     The fact that Mr. Valgos has received disability benefits

28 may indicate that he is laboring under a special circumstance

-6-

1  meriting a downward income adjustment, at least in a chapter 7
2  case.  However, the fact that those benefits will end, could also
3  mean that his disability has ended or will end.

4       Assuming it is authorized by section 1325(b) to make a
5  downward income adjustment to a chapter 13 debtor's current
6  monthly income, the court will not do so without more specific
7  and documented information concerning the debtor's special
8  circumstances.

9       Second, while section 1325(b) refers to section
10 707(b)(2)(B), it does not incorporate section 707(b)(2)(B) into
11 chapter 13 in its entirety.  The only reference to section
12 707(b)(2)(B) in section 1325(b) appears in paragraph (b)(3),
13 providing that "[a]mounts reasonably necessary to be expended
14 under paragraph (2) [of section 1325(b)] shall be determined in
15 accordance with subparagraphs (A) and (B) of section 707(b)(2)."
16 That is, when deducting expenses from current monthly income, a
17 chapter 13 debtor may deduct only those expenses permitted by
18 section 707(b)(2)(A) as adjusted under section 707(b)(2)(B) in
19 order to take into account the debtor's special circumstances.

20      But, nothing in section 1325(b)(3) authorizes the court to
21 make adjustments to current monthly income, the reference to
22 section 707(b)(2)(B) notwithstanding.  The introductory language
23 of section 1325(b)(3) gives context to this reference.  Section
24 1325(b)(3) permits the application of section 707(b)(2)(B) only
25 to determine "amounts reasonably necessary to be expended" on the
26 debtor's and the debtor's dependents' maintenance and support as
27 well as the debtor's business.
28 ///

1    Essentially, section 1325(b)(1) specifies whether a chapter
2  13 plan must provide for the payment of all projected disposable
3  income to unsecured creditors.  When it must be paid, paragraphs
4  (2), (3), and (4) of section 1325(b) provide the equation to
5  project disposable income and the period of time it must be paid
6  to unsecured creditors.  That equation has three variables: (1)
7  the length of the plan; (2) the debtor's future income; and (3)
8  the debtor's ongoing personal living and business expenses.

9    The mandatory length of a plan is the "applicable commitment
10 period," the period during which unsecured creditors must receive
11 the debtor's projected disposable income.  For a debtor with
12 current monthly income in excess of the applicable median income,
13 section 1325(b)(4) requires a commitment period of five years.

14   Section 1325(b)(2) requires that a chapter 13 debtor's
15 future disposable income be predicted from the "current monthly
16 income received by the debtor. . . ."  Given the definition of
17 current monthly income in section 101(10A), this prediction must
18 be based on the debtor's average income received over the six-
19 month period immediately preceding the filing of the petition.
20 Beyond permitting the court to exclude child support payments,
21 foster care payments, or disability payments received by the
22 debtor for a dependent child, section 1325(b)(2) does not permit
23 the court to make adjustments to this six-month historical income
24 average.

25   Logic suggests that any authorization to make adjustments to
26 a chapter 13 debtor's current monthly income would be found in
27 section 1325(b)(2).  It is the provision supplying the income
28 variable to the disposable income equation.  Section 1325(b)(2)

-8-

1  incorporates the defined term, "current monthly income," and it

2  permits limited exclusions [child support, foster care,

3  disability payments received by the debtor for a dependent child]

4  from current monthly income.  But, nothing in section 1325(b)(2)

5  permits the court to make the type of income adjustment suggested

6  by the Debtors in this case.

7      From current monthly income, a chapter 13 debtor may deduct

8  reasonably necessary living and business expenses.  See 11 U.S.C.

9  § 1325(b)(2)(A)(i) & (B).  If the debtor's current monthly income

10  equals or is less than the applicable median income, what is

11  reasonable and necessary is left to the discretion of the court.

12  If the debtor's current monthly income exceeds the applicable

13  median income, these expenses are calculated using the means test

14  set out in section 707(b)(2)(A) with the proviso that the debtor

15  may show, under section 707(b)(2)(B), that special circumstances

16  warrant a downward adjustments to expenses.  See 11 U.S.C. §

17  1325(b)(3).

18      To the extent the Debtors believe that they should be

19  permitted to make a downward adjustment to their future income,

20  their recourse lies, not in asking the court to ignore what

21  Congress has written, but in persuading the trustee to abandon

22  his objection.  After all, section 1325(b) has become an issue

23  only because the trustee raised the objection.  He is not

24  required to raise the objection.  Thus, if the Debtors' can

25  convince the trustee that the statutory formula does not

26  accurately predict their future income, the trustee may not

27  pursue the objection further.

28  ///

Application of section 1325(b) to this case compels the conclusion that the Debtors' plan must provide for the payment of all projected disposable income to unsecured creditors.  It does not do so.  Therefore, the trustee's objection that the plan does not comply with section 1325(b) will be sustained.  The trustee shall lodge a proposed order.

Dated: *13 March 2006*

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Michael O'Neal
1565 River Park Dr #A
Sacramento, CA 95815

Marilyn Valgos
3500 San Clemente Ave #154
Modesto, CA 95356

Michael Valgos
3500 San Clemente Ave #154
Modesto, CA 95356

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Office of the U.S. Trustee
501 I Street , Room 7-500
Sacramento, CA 95814

Dated: _____ 3/14/06                 _____
                                      Deputy Clerk